UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. S1-4:18CR155 AGF/NCC |
| ) | |
| HARLEY A. POSPISIL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM, AND REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

On August 7, 2019, Defendant filed an Amended Motion to Suppress Evidence. (Doc. No. 80).  On August 14, 2019, the Government filed its Response.  (Doc. No. 84).  On August 28, 2019, Defendant filed his Reply (Doc. No. 88).   A hearing was held on Defendant's motion on September 26, 2019; and a written transcript was filed on October 7, 2019 (Doc. No. 97).  A second hearing was held on November 14, 2019 to confirm the parties' position about alleged events involving Defendant in April 2013.  Thereafter, on November 25, 2019, a written transcript of the second hearing was filed.  (Doc. No. 104).

Based on the evidence and testimony adduced, as well as a review of the transcripts of the hearing in this matter; and having had an opportunity to evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

**Findings of Fact**

On December 20, 2016, Deputy Brian Johnson with the Lincoln County Sheriff's Department was eating breakfast at a local eatery in Troy, Missouri when he was approached by the restaurant owner who asked him to meet Cathy Klay in the restaurant kitchen. Deputy Johnson and Ms. Klay were not acquainted before this encounter. Ms. Klay told Deputy Johnson that she discovered what she believed to be thousands of photographs on the computer and cell phone of defendant Harley Pospisil, her live-in boyfriend in Elsberry, Missouri. Deputy Johnson observed that Ms. Klay seemed emotional, nervous and upset. She described the photographs she accessed and saved as depicting naked children between the ages of 5 and 7 years old. Ms. Klay gave Deputy Johnson three SD cards and a thumb drive with images from defendant's computer and cell phone. Ms. Klay also drafted a written statement for the Lincoln County Sheriff's Department, as reflected in Gov't Exh. 2. Ms. Klay identified several computers at their residence and she described defendant's cell phone as a black Samsung Galaxy model with a shatter(ed) screen.[1]

Deputy Johnson contacted Detective Harney with the Lincoln County Sheriff Criminal Investigations Division and he gave the storage devices to Detective Kosmicki, who in turn contacted the St. Charles County Cyber Crimes Task Force. Lincoln County Sheriff's Deputy

---

[1] The Government's Response to Defendant's Amended Motion to Suppress Evidence (Doc. No. 84) includes a recitation of facts from April 18, 2013 in which defendant was the target of a different investigation alleging that he attempted to steal photographs from a Wal-Mart store. The police investigation led officers to believe that defendant printed photographs of suspected child pornography at a photo kiosk at a Wal-Mart in Wentzville, Missouri and he left the store without paying. The Wentzville police officers also seized and searched a Samsung Galaxy S3 in defendant's possession and they found images of suspected child pornography. Ms. Klay was also interviewed by the Wentzville police and she gave officers evidence of defendant's suspected collection of printed child pornography and gave consent to search her laptop for other suspected images. At the hearing held on November 14, 2019, defendant asserted through his counsel that he was not seeking to suppress any evidence seized or statements made as a result of the 2013 encounter.

Chris Bosley was assigned to the St. Charles County Cyber Crimes Task Force at the time of these events, and he was serving as the sergeant in charge. The Cyber Task Force coordinated investigations of child pornography, child exploitation and human trafficking. Chris Bosley had more than 20 years of training and experience as a police officer and more than eight years working cyber-crime cases. Deputy Bosley also had extensive training in forensic evidence investigations and he was knowledgeable about digital investigations of these crimes in December 2016.

Deputy Bosley applied for a Missouri state search warrant after viewing images from the devices obtained from Ms. Klay and discussing the matters with the other Lincoln County deputies. A prosecutor also signed the application. He and others believed the images that he observed constituted child pornography. The search warrant for 412 North Third Street, Elsberry and its supporting documents are incorporated here by reference as if fully set out here. (*See* Gov't Exhs. 1a through 1c). These exhibits were received into evidence. They are the best evidence of their contents. This summary is merely for the trial court's convenience.

At the hearing held September 26, 2019, Deputy Bosley testified that the search warrant expressly authorized the search of 412 North Third Street, Elsberry and seizure of "any and all electronic data processing and storage devices, computer and computer systems …." No reference was made in the search warrant or supporting application to the black Samsung Galaxy cell phone. There is no evidence that defendant Pospisil granted consent to search his cell phone.

Thereafter, members of the Lincoln County Sheriff's Department searched for computer electronics, cell phones and digital storage devices led by Deputy Bosley who knew that child pornography is mostly kept in the form of digital videos and images from the internet. Deputy Bosley testified that the Samsung Galaxy cell phone seized is a smartphone with internet

capabilities, storage for text messages and images, and that it is "basically the same thing as a computer." Deputy Bosley further testified that if he believed that the search and seizure of the cell phone was not covered by the original search warrant, he would have sought a second search warrant. Investigators found relevant evidence on the cell phone while at defendant's house.

Defendant Pospisil was home and he was interviewed when the search occurred.[2] Defendant acknowledged that the Samsung cell phone found on a bed near a laptop computer was his. Defendant made other incriminating statements relevant to the investigation and about the items sought in the search warrant. Officers conducted on-site digital examination of the computer devices and they took photographs of the interior and exterior of the house. Defendant was arrested.

## Discussion

Defendant Pospisil raises a single challenge[3]: he argues that the state search warrant for his residence was overbroad because it was not particular as to his Samsung cell phone and its search and seizure violates the Fourth Amendment under the rule established in *Riley v. California*, 573 U.S. 373, 400 (2014). The Government counterargues that the cell phone was lawfully seized and searched because the search warrant authorized the seizure of any computer or an electronic storage device and the Samsung Galaxy cell phone fits within this general description. Additionally, the Government argues that Lincoln County police deputies relied in good faith on the valid state search warrant, which was supported by probable cause. Thus, the evidence should not be suppressed. Defendant is correct that after *Riley*, the police can no longer

---

[2] Deputy Bosley testified at the hearing about giving *Miranda* warnings and obtaining a waiver from defendant Pospisil. Defendant is not challenging the admissibility of any statement that he made, so those matters are not addressed in this Report and Recommendation.

[3] The parties agree that the Court will address defendant's Amended Motion To Suppress Evidence. (Doc. No. 80).

routinely search a cell phone incident to an arrest and, as a result, typically a search warrant must be obtained. *Id.* Pospisil is also correct that the search warrant in question does not list a cell phone as an item to be seized or searched.

The Fourth Amendment provides that a search warrant must describe with particularity the place to be searched and the things to be seized. U.S. Const. amend. IV; Rule 41, Federal Rules of Criminal Procedure. *See United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) ("[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue...."). "The degree of specificity required will depend on the circumstances of the case and on the type of items involved." *Id*. (citing *United States* v. *Horn*, 187 F.3d 781, 788 (8th Cir. 1999)). The particularity requirement under the Fourth Amendment is not a "hypertechnical" standard, but one of "practical accuracy." *Id*. (citing *United States v. Peters*, 92 F.3d 768, 769–770 (8th Cir. 1996)). Thus, the Fourth Amendment protects against "wide-ranging exploratory searches" unsupported by probable cause. *United States v. Rosa*, 626 F.3d 56, 61 (2d Cir. 2010) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)).

The Government cites to pre-*Riley* cases in its response. These cases generally comment on the technological advances of smart phones and the functional similarities of wireless communication devices to computers. (*See* Doc. No. 84, pp. 6-7). The Government argues that defendant's cell phone can be considered a computer or an electronic storage device and searched on that basis. This argument has some merit, given society's evolving understanding of this sophisticated technology and the Supreme Court's commentary in *Riley* that "[t]he term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone." 573 U.S. at 393. But the Supreme Court's acknowledgment that the technologies are similar does not mean that they are the same

5

when considering the rigors of the Fourth Amendment.  And the holding in *Riley* does not squarely address the crux of this case.  For example, when examining similar facts before it, the Second Circuit has held that a state search warrant to search and seize items from a defendant's house for "electronic equipment or digital information" looking for child pornography was defective because the language was overbroad.  *United States v. Rosa*, 626 F.3d 56 at 62.  Further, a general rationale for searching Pospisil's complete library of electronic media falls apart when considering that Ms. Klay made an issue of identifying defendant Pospisil's cell phone.

      The undersigned finds that the search warrant is defective as to defendant's cell phone because the item is outside the scope of the warrant.  *See, e.g., United States v. Szczerba*, 897 F.3d 929, 937 (8th Cir. 2018) ("The warrant lacked particularity because it did not list the items to be seized.").  The next question is whether the exclusionary rule should apply or whether it should not if the Lincoln County deputies could reasonably rely on the warrant despite the defect.  *United States v. Warford*, 439 F.3d 836 (8th Cir. 2006)(deciding to reach the question of "applicability of the good-faith exception to the exclusionary rule" before probable cause "[i]f the officers acted in good-faith reliance on a warrant, then there is no need to visit the underlying question of probable cause.").

      When police officers seize evidence in violation of the Fourth Amendment, that evidence is likely subject to suppression under the exclusionary rule, but such exclusion is not automatic.  As this Court has recently noted, "[i]nstead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct."  *United States v. Suellentrop*,

6

No. 4:17CR435CDP(JMB) [4], 2018 WL 4693082, at *1 (E.D. Mo. July 23, 2018), *report and recommendation adopted sub nom. United States v. Sullentrop*, No. 4:17CR435CDP, 2018 WL 3829798 (E.D. Mo. Aug. 13, 2018), *argued sub nom. United States v. Suellentrop*, No. 19-1002 (8th Cir. Sept. 27, 2019) (quoting *Herring v. United States*, 555 U.S. 135, 137 (2009); *United States v. Houck*, 888 F.3d at 959-60 (8th Cir 2019)(quoting same)). "[W]hen assessing the officer's good faith reliance on a search warrant under the *Leon* good faith exception, we can look outside the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit."), *cert. denied*, 35 S. Ct. 504 (2014). In *Suellentrop*, which also involves charges concerning child pornography after a search of the defendant's cell phone, the Magistrate Judge's findings and conclusions of law were adopted that the state-issued search warrant was defective because it lacked particularity to justify seizing a cell phone, and the exclusionary rule should not apply despite this defect. (*Id.*, Doc. No. 50). "Although the warrant application did not specifically include the cell phone as an item to be searched, the officer who prepared the affidavit fully intended it to cover the phone and believed that it did cover that phone. Because the search was done in good-faith reliance on a valid search warrant, this evidence should not be suppressed." *Suellentrop*, 2018 WL 3829798, at *2.

Still, defendant Pospisil argues that *United States v. Leon*, 468 U.S. 897 (1984), and its progeny should not apply here because the Supreme Court's decision in *Riley* occurred nearly three years prior to these events, which makes it clear that the police must obtain a search warrant for a cell phone incident to a suspect's arrest. Defendant is correct in his restatement of the rule in *Riley*, but this case is like *Suellentrop*, which turns on the reasonable belief by the

---

[4] Mr. Hogan also represents Mr. Suellentrop and referred to the pending appeal before the Eighth Circuit in his argument before the undersigned.

7

police that their actions fell within the scope of a warrant deemed defective. *See also, Houck*, 888 F.3d at 959-60 (reversing district court's grant of motion to suppress after officers made an "honest mistake" in searching an unhitched RV on property that fell outside the scope of the warrant that authorized search of any vehicle on the property) (quotations omitted). This is consistent with other law in this Circuit. "Even if the affidavit were deemed deficient in hindsight, moreover, evidence would not be suppressed if the police acted in good faith reliance on a search warrant issued by a neutral and detached magistrate." *United States v. Lucca*, 377 F.3d 927 (8th Cir. 2004); citing *Leon*, 468 U.S. 897 at 922–23.

In *Leon*, the Supreme Court considered whether the exclusionary rule should apply in the case where the lower courts concluded that the subject search warrant was not supported by probable cause in the attached affidavit. The Supreme Court weighed the question of whether the issuing judge acted with detached and neutral scrutiny and decided if so, then the judge's probable cause ruling should be given deference. 468 U.S. at 913-14. Here, defendant has not shown that the issuing judge acted other than in a detached and neutral manner. It follows from the totality of the circumstances of this case that the issuing judge acted in a way that was consistent with "the detached scrutiny of a neutral magistrate." *Id.* at 913. There is no evidence before this court that indicates that the issuing judge acted as a "rubber stamp for the police." *Id.* at 914.

Next, the Supreme Court considered the issue that deference to the issuing judge may diminish in light of the type of knowing or reckless falsity in the affidavit that was the subject of *Franks v. Delaware*, 438 U.S. 154 (1978). Defendant has not asked for a *Franks* hearing in this case and there is no claim that Deputy Bosley's affidavit is false or that he intentionally or with

8

reckless disregard for the truth failed to specifically include the cell phone within the scope of the warrant. *United States v. Finley*, 612 F.3d 998, 1002-03 (8th Cir. 2010).

Further, the Supreme Court considered that applying the exclusionary rule,

> is not necessary meaningfully to inform judicial officers of their errors, and we cannot conclude that admitting evidence obtained pursuant to a warrant while at the same time declaring that the warrant was somehow defective will in any way reduce judicial officers' professional incentives to comply with the Fourth Amendment, encourage them to repeat their mistakes, or lead to the granting of all colorable warrant requests.

*Leon*, 468 U.S. at 917.

Finally, the Supreme Court considered whether the form of the issued warrant was technically sufficient. *Id.* at 921. There is no evidence here to the contrary. Moreover, the Eighth Circuit has repeatedly reasoned,

> We have recognized four circumstances that preclude a finding of good faith: "(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid."

*United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015). In evaluating a search under *Leon*, we "must look at the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant." *Jackson*, 784 F.3d 1227 at 1231. The warrant issued here met the requisite criteria.

9

The information from Ms. Klay was credible and supported by the evidence she gave to Deputy Johnson and, thus, the investigation was reasonably pursued and conducted.  Deputy Bosley had significant training and experience in this area of investigations.  He intended for the search warrant to cover the cell phone and he testified that he would have obtained a second warrant if he believed that the cell phone was not within the scope of the definition "electronic storage device" and computer.  A prosecutor also signed the search warrant application, which is a relevant factor for courts to consider because law enforcement acted with counsel.  *United States v. Johnson*, 78 F.3d 1258, 1264 (8th Cir. 1996).  Deputy Bosley thought the cell phone was a covered item based on his interpretation of the wording in the search warrant.  "[W]hen police mistakes are the result of negligence … rather than systematic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.'" *Szczerba*, 897 F.3d 929 (quoting *Leon*, 468 U.S. at 907-08 n.6).  The undersigned will credit his testimony and notes that the other evidence of record supports the conclusion that Deputy Bosley's reliance on the warrant was objectively reasonable.  This does not appear to rise to the type of flagrant misconduct that should result in suppression.  Because Det. Bosley had probable cause to obtain the search warrant and officers relied in good faith on its issuance, the evidence was seized lawfully.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Amended Motion to Suppress Evidence (Doc. No. 80) be **DENIED.**

At the direction of the district court,

**IT IS HEREBY ORDERED** that this cause is set for trial on **Monday, February 3, 2020, at 9:00 AM** before United States District Judge Audrey G. Fleissig.

The parties are advised that they have fourteen (14) days to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to timely file objections may result in the waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

/s/Noelle C. Collins
United States Magistrate Judge

Dated this 23th day of December, 2019.